In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-18-00055-CV**
**IN THE INTEREST OF E.R.N.**

**On Appeal from the County Court at Law No. 3**
**Montgomery County, Texas**
**Trial Cause No. 14-03-03329-CV**

**MEMORANDUM OPINION**

In this parental rights termination case, the appellant D.N. appeals from an order terminating his parental rights to his minor child, E.R.N. In issues one through four, D.N. contends that the evidence is legally and factually insufficient to support the trial court's decision to terminate his parent-child relationship with E.R.N. *See* Tex. Fam. Code Ann. §§ 161.001(b)(1)(E), (F), (O), (Q) (West Supp. 2017). In issue five, D.N. argues that the evidence is legally and factually insufficient to support the trial court's best-interest finding. *Id.* 161.001(b)(2) (West Supp. 2017). We affirm the trial court's judgment.

BACKGROUND

On October 19, 2016, the Department of Family and Protective Services ("the Department") filed a petition for modification, for protection of a child, for conservatorship, and for termination in suit affecting the parent-child relationship (SAPCR). In the SAPCR, the Department sought, among other things, to terminate D.N.'s parental rights, alleging that D.N. had committed eight predicate statutory grounds that justified terminating D.N.'s parental relationship with E.R.N. In the affidavit in support of removal, Tracy Tyler, a representative of the Department, averred that the Department had received an intake alleging the neglectful supervision of E.R.N. by her mother, W.W. According to Tyler, the allegation was ruled out because W.W. placed E.R.N. with W.W.'s parents. Tyler averred that D.N.'s current address was in the Huntsville prison and that he had no visitation with E.R.N. due to a protective order. According to Tyler's affidavit, D.N. was convicted of aggravated robbery on December 27, 2013. Tyler stated that due to D.N.'s family violence finding, it is contrary to E.R.N.'s welfare to be with D.N.

D.N. filed a pro se response to the Department's petition contesting the termination of his parental rights. On December 13, 2016, the trial court appointed the Department as the temporary managing conservator of E.R.N., and that same day, the Department placed E.R.N. with her maternal grandparents. The clerk's

record shows that D.N. is currently incarcerated and is eligible for parole in December 2020 and that his projected release date is December 2027. The clerk's record also shows that W.W. died in June 2017.

The case proceeded to trial in December 2017. Masheila Blackwell, a conservatorship caseworker with the Department, testified that she was assigned to E.R.N.'s case in August 2016, and that E.R.N. was four years old at the time of trial. Blackwell explained that D.N. has a history of domestic violence and that D.N. has been incarcerated since December 2013. Blackwell testified that to her knowledge, D.N. had not provided any financial support for E.R.N. in the past year. According to Blackwell, if the Department could not have placed E.R.N. with the maternal grandparents, it would have considered D.N.'s mother as a possible placement for E.R.N.

Sharon Howerton, the CASA volunteer assigned to E.R.N.'s case, testified that she visits E.R.N. at her current placement with her maternal grandparents, and E.R.N. is doing very well. According to Howerton, E.R.N.'s maternal grandparents' home has always been E.R.N.'s second home because W.W. had a history of leaving E.R.N. with her maternal grandparents for extended periods of time. Howerton explained that CASA recommended that E.R.N. live with her maternal grandparents because they are already like E.R.N.'s parents and it would be detrimental to move

3

E.R.N. According to Howerton, it was W.W.'s desire to have E.R.N. placed with her maternal grandparents.

Howerton testified that D.N. has not contacted her and that the protective order against D.N. extends for a year after he is released from prison. According to Howerton, it is in E.R.N.'s best interest for D.N.'s parental rights to be terminated, because in Howerton's opinion, D.N. was not protective of E.R.N. when he abused W.W. while she was pregnant with E.R.N. Howerton testified that E.R.N. has a relationship with D.N.'s mother, but she does not believe that E.R.N. has a relationship with D.N. or that it would be detrimental to E.R.N. to terminate D.N.'s parental rights. Howerton further testified that she had not spoken with D.N. or D.N.'s mother in any detail concerning the case or how E.R.N. was doing.

D.N. testified that he committed the offense of aggravated robbery and was sentenced to fourteen years in prison. D.N. testified that he has been incarcerated since December 17, 2013, and he is eligible for parole in 2020. According to D.N., E.R.N. was six months old when he was incarcerated, and since that time, D.N. has not paid any child support because he has no income and has not been ordered to pay child support. D.N. explained that he lived with E.R.N. until November 2013.

When D.N. was asked if he had made any efforts to have E.R.N. placed with anyone after the Department removed her from W.W., D.N. testified, "[y]es, my

mother can take her." D.N. explained that he is in contact with his mother, who sees E.R.N. on a regular basis and allows him to talk with E.R.N. on the telephone. According to D.N., his mother is able to take care of E.R.N. and provide a safe environment, and if D.N. requested his mother to do so, he "believe[d] she would." D.N. testified that his mother sends D.N. money and buys E.R.N. clothes and gifts on his behalf. D.N. testified that he has not seen E.R.N. in two years, but he does not want his parental rights terminated and is willing to pay child support and have supervised visitation once he is released from prison.

The trial court found that clear and convincing evidence supported four predicate statutory grounds for terminating D.N.'s parental rights and that termination of D.N.'s parental rights is in the best interest of the child. *See* Tex. Fam. Code Ann. §§ 161.001(b)(1)(E), (F), (O), (Q), (2). The trial court rendered a final judgment that terminated D.N.'s parental rights to E.R.N.

## ANALYSIS

In issues four and five, D.N. contends the evidence is legally and factually insufficient to show that (1) he knowingly engaged in criminal activity that resulted in his conviction for an offense, and his confinement or imprisonment created an inability to care of E.R.N. for not less than two years from the date of filing the petition; and (2) terminating his parental rights is in the best interest of E.R.N. *See*

5

Tex. Fam. Code Ann. §§ 161.001(b)(1)(Q), (2). According to D.N., he is not unable to care for E.R.N. due to his incarceration, because he demonstrated that his mother can care for E.R.N. on his behalf. Because issues four and five are dispositive, we address them first. *See* Tex. R. App. P. 47.1.

Under legal sufficiency review, we review all the evidence in the light most favorable to the finding to determine whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* If no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, the evidence is legally insufficient. *Id.*

Under factual sufficiency review, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* We give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have

credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id.*

The decision to terminate parental rights must be supported by clear and convincing evidence, *i.e.*, "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *In the Interest of J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). The movant must show that the parent committed one or more predicate acts or omissions and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001 (West Supp. 2017); *see also In the Interest of J.L.*, 163 S.W.3d at 84. We will affirm a judgment if any one of the grounds is supported by legally and factually sufficient evidence and the best interest finding is also supported by legally and factually sufficient evidence. *See In the Interest of A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Section 161.001(1)(Q) allows for termination if the trial court finds by clear and convincing evidence that the parent has knowingly engaged in criminal activity that resulted in the parent's conviction of an offense; and the confinement or imprisonment creates an inability to care for the child for not less than two years from the date of filing the petition. Tex. Fam. Code Ann. § 161.001(1)(Q).

Subsection Q focuses on the parent's future incarceration and on the parent's inability to care for the child. *In the Interest of H.R.M.*, 209 S.W.3d 105, 109-10 (Tex. 2006); *In the Interest of N.R.T.*, 338 S.W.3d 667, 675 (Tex. App.—Amarillo 2011, no pet.). Subsection Q purports to protect a child whose parent will be incarcerated for periods exceeding two years after a termination proceeding begins. *See In the Interest of A.V.*, 113 S.W.3d at 360-61. To terminate parental rights under subsection Q, the Department must show that the parent is incarcerated and unable to care for the child for at least two years from the date the termination pleading was filed. *See In the Interest of H.R.M.*, 209 S.W.3d at 110. While parole decisions are inherently speculative, evidence of the availability of parole is relevant to determining whether the parent will be released within two years. *Id.* at 109. In cases in which the incarcerated parent has indicated that the support of the child will come from the incarcerated parent's family, there must be an agreement between the parties to assume the obligation to care for the child on the parent's behalf. *See Hampton v. Tex. Dep't of Protective & Regulatory Servs.*, 138 S.W.3d 564, 567 (Tex. App.—El Paso 2004, no pet.); *In the Interest of Caballero*, 53 S.W.3d 391, 396 (Tex. App.—Amarillo 2001, pet. denied).

The record shows that the termination petition was filed in October 2016. The record further shows that D.N. has been incarcerated since December 2013, is

eligible for parole in 2020, and has a projected release date of December 2027. D.N. testified that since being incarcerated in 2013, he has not provided any financial support for E.R.N., but his mother has purchased items for E.R.N. on his behalf. D.N. testified he would pay child support once he is released from prison; however, the earliest release date would be over two years after the petition was filed if he were paroled in 2020. Although D.N. testified that he believed his mother would take care of E.R.N. on his behalf if requested, D.N.'s mother did not testify that she had agreed to care for E.R.N. on D.N.'s behalf during his incarceration. *See In the Interest of H.R.M.*, 209 S.W.3d at 110; *In the Interest of Caballero*, 53 S.W.3d at 396.

Viewing the evidence in the light most favorable to the trial court's finding under subsection 161.001(1)(Q), we conclude that the trial court could reasonably conclude and form a firm belief or conviction that D.N. knowingly engaged in criminal activity that resulted in his conviction of an offense, and confinement or imprisonment and inability to care for E.R.N. for not less than two years from the date of filing the petition. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(Q); *In the Interest of H.R.M.*, 209 S.W.3d at 110; *In the Interest of N.R.T.*, 338 S.W.3d at 675-76.

Regarding the child's best interest, we consider a non-exhaustive list of factors: (1) desires of the child; (2) emotional and physical needs of the child now and in the future; (3) emotional and physical danger to the child now and in the future; (4) parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the best interest of the child; (6) plans for the child by these individuals or by the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see* Tex. Fam. Code. Ann. § 263.307(b) (West Supp. 2017). No particular *Holley* factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in the child's best interest. *In the Interest of A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.). The best interest determination may rely on direct or circumstantial evidence, subjective facts, and the totality of the evidence. *See In the Interest of N.R.T.*, 338 S.W.3d at 677.

In regard to the *Holley* factors, D.N. maintains that there was no evidence from the child's current placement regarding the best interest of the child. According to D.N., the record is silent from the current placement regarding the child's desires, the current or future emotional and physical needs of the child, the current or future

10

emotional and physical danger to the child, the parenting abilities of the individuals seeking custody, available programs to assist the individuals seeking custody, and the stability of the home or proposed placement. D.N. also argues that there is no clear and convincing evidence of any acts or omissions by him indicating an improper relationship with the child.

With respect to the best interest finding, the trial court heard testimony from Blackwell that E.R.N. is doing very well with her maternal grandparents, who E.R.N. has been around her entire life, and that the maternal grandparents want to adopt E.R.N. The trial court heard Blackwell testify that she believed it was in E.R.N.'s best interest that D.N.'s parental rights be terminated. The trial court also heard testimony from Howerton, who had visited E.R.N. at her maternal grandparents' home and explained that E.R.N. was doing very well. Howerton testified that E.R.N.'s maternal grandparents act like E.R.N.'s parents, and E.R.N. has spent extended periods of time at her maternal grandparents' home, which E.R.N. considers to be her home. The trial court heard Howerton's testimony that CASA recommended that E.R.N. should live with her maternal grandparents and that it would be detrimental to move E.R.N. The trial court also heard Howerton testify that it was in E.R.N.'s best interest for D.N.'s parental rights to be terminated

11

and that termination would not be detrimental, because E.R.N. did not have a relationship with D.N.

"[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." Tex. Fam. Code Ann. § 263.307(a) (West Supp. 2017). As the sole judge of the credibility of the witnesses and the weight to be given to their testimony, the trial court could reasonably conclude that termination of D.N.'s parental rights was in the best interest of E.R.N. *See id.* §§ 161.001(b)(2), 263.307(a); *see also J.F.C.*, 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371-72. We conclude that the Department established, by clear and convincing evidence, that D.N. committed the predicate act enumerated in section 161.001(b)(1)(Q) and that termination of D.N.'s parental rights is in the best interest of E.R.N. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(Q), (2); *In the Interest of A.V.*, 113 S.W.3d at 362. We overrule issues four and five. Having determined that the evidence is legally and factually sufficient to support termination under subsection (Q), we need not address the sufficiency of the evidence as to subsections (E), (F), and (O). *See In the Interest of A.V.*, 113 S.W.3d at 362. We overrule issues one, two, and three. Having overruled all of D.N.'s issues on appeal, we affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on May 7, 2018
Opinion Delivered July 12, 2018

Before McKeithen, C.J., Horton and Johnson, JJ.